UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
TRUSTEES OF THE MOSAIC & TERRAZZO
WELFARE PENSION, ANNUITY,
& VACATION FUNDS, et al.,

       Plaintiff,                          MEMORANDUM AND ORDER

     - against -                         13 CV 1739 (ILG) (SMG)

CONTINENTAL FLOORS, INC., et al.,

       Defendant.
--------------------------------------------------------x
GLASSER, United States District Judge:

       Plaintiffs, the trustees of several employee benefit plans, bring this action against defendants Continental Floors, Inc. ("Continental") and Reliance Floor, Inc. ("Reliance," and together with Continental, "defendants"), alleging that defendants constitute a single employer or alter egos of one another, such that Reliance is bound by a collective bargaining agreement to which Continental is a signatory and both are liable to plaintiffs for delinquent employer contributions.

       Currently before the Court is defendants' motion to dismiss the complaint for lack of subject matter jurisdiction under 29 U.S.C. § 185; to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; or for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is DENIED.

## BACKGROUND

I.    Facts & Procedural History

       The following facts are taken from plaintiffs' complaint and are accepted as true for purposes of this motion. Plaintiffs are the trustees of a group of multiemployer

1

labor-management trust funds (the "Funds"), which are employee benefit plans within the meaning of section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA", 29 U.S.C. §§ 1001 et seq.). Complaint dated April 1, 2013 ¶¶ 4–6 [Dkt. No. 1] ("Compl."). Continental is a party to a collective bargaining agreement (the "CBA") with the Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Union"). Id. ¶ 10. The CBA applies to all work "of the type covered by [the CBA]" performed by Continental, whether "under its own name, as an alter ego or under the name of another . . . wherein [Continental] (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control." Id. ¶ 13 (quoting the CBA). Pursuant to the CBA, Continental is obligated to make monthly contributions to the Funds based on the number of hours of employment of its employees within the trade and geographical jurisdiction of the Union during the preceding month. Id. ¶ 12.

Reliance is not a signatory to the CBA, and does not make contributions to the Funds. However, plaintiffs allege that Reliance is bound by the CBA, either because it is an alter ego of Continental or because the two constitute a single employer. Plaintiffs allege that Continental and Reliance have substantially identical management, business purposes, operations, equipment, customers, supervision, and ownership, and that Continental exercises control over Reliance. Id. ¶ 16, 23. In addition, plaintiffs allege that Continental and Reliance share a location and telephone number, id. ¶ 17, common employees, id. ¶ 18, and common insurance coverage, id. ¶ 21, and that Continental has

used Reliance to perform work covered by the CBA and evade its contribution obligations to the Funds since May 2007. Id. ¶ 27.

Under the CBA, plaintiffs "have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determine the accuracy of contributions to the funds." Id. ¶ 14 (quoting the CBA). Prior to commencing this action, Plaintiffs requested access to Continental's records for the period beginning January 1, 2010, but Continental did not produce all of the relevant records. Id. ¶ 26. Plaintiffs also requested that Continental provide them access to records of Reliance, which request was denied. Id. ¶ 33.

Plaintiffs initiated this action by filing their Complaint in this Court on April 1, 2013. Dkt. No. 1. The defendants answered the Complaint on May 14, 2013. Dkt. Nos. 7, 8. Discovery has only recently commenced and is not scheduled to be completed until December 6, 2013. See Dkt. No. 11. On August 8, 2013, defendants moved to dismiss the complaint for lack of statutory subject matter jurisdiction and failure to state a claim, or, in the alternative, for summary judgment. Dkt. No. 12 ("Defs.' Mem."). Plaintiffs filed their opposition on September 9, 2013. Dkt. No. 13 ("Pls.' Opp'n"). Defendants filed their reply on September 19, 2013. Dkt. No. 18 ("Defs.' Reply").

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the

3

plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quoting Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)). If the Court considers "matters outside the pleadings," then "the motion

4

must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002).

Defendants attach multiple certifications and exhibits to their motion. Certification of Jairo Decarvalho dated July 19, 2013, Ex. A [Dkt. No. 12-3] ("Decarvalho Cert."); Certification of John A. Craner dated August 6, 2013 Exs. A-B [Dkt. No. 12-3] ("Craner Cert."). The Court will not consider these extrinsic documents in deciding plaintiffs' motion pursuant to Rule 12(b)(6). The certifications and their exhibits contain, among other things, denials of certain allegations in the complaint and a list of equipment owned by Continental. These materials are neither referenced nor relied upon in the Complaint, and are not the kinds of facts that may be judicially noticed. Fed. R. Evid. 201(b). Moreover, as discovery has only just begun and none of the parties have produced even initial disclosures, plaintiffs may not have been aware of much of this information and have not had any opportunity to rebut it. Since "lack of notice" is the primary "harm to the plaintiff[s] when a court considers material extraneous to the complaint," the Court will not convert defendants' motion to one for summary judgment when plaintiffs have not yet had the benefit of discovery. Chambers, 282 F.3d at 153–54.[1]

## DISCUSSION

---

[1] In any event, these submissions cannot be considered on summary judgment. An unsworn declaration such as the Decarvalho Certification may be treated as having "like force and effect" as a sworn declaration provided that it is subscribed to, in writing "as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.'" 28 U.S.C. § 1746 (emphasis added). The attached certifications do not conform to the statute, but rather state: "I hereby certify that the foregoing statements made by me are true. If any of the foregoing statements made by me are willfully false, I recognize that I may be subject to punishment." Decarvalho Cert. at 4. "The substitution of 'subject to punishment' for 'under penalty of perjury' is a substantial departure from the substance of the declaration provided in § 1746, and thus, does not comply with the statute." In re World Trade Ctr. Disaster Site Litig., 722 F.3d 483, 488 (2d Cir. 2013); see also Silverman v. Miranda, 918 F.Supp.2d 200, 217–18 (S.D.N.Y. 2013) (holding that evidence supported by declaration that did not comply with the requirements of 28 U.S.C. § 1746 "could not be considered on summary judgment").

5

I. Subject Matter Jurisdiction

Defendants first assert that this Court lacks jurisdiction to adjudicate any of the claims in this action, because plaintiffs lack standing under 29 U.S.C. § 185. Defs.' Mem. at 2–4. Section 185 provides for jurisdiction in the district courts over "suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Defendants argue that because plaintiffs are neither labor organizations nor employers, they "do not have standing to sue under section 185." Defs.' Mem. at 2.

Defendants are correct that plaintiffs are neither labor organizations nor employers. But the trustees of multiemployer plans have been held to be third-party beneficiaries of the collective bargaining agreements that obligate employers to contribute to those plans. See, e.g., Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir. 1990). Accordingly, plan trustees have repeatedly been held to have standing to enforce the corresponding contribution provisions of such collective bargaining agreements, even where they are not signatories to those agreements. See, e.g., Fishbein v. Miranda, 670 F. Supp. 2d 264, 275–76 (S.D.N.Y. 2009). And this is precisely what plaintiffs seek to do in this action.[2]

Defendants also assert that this Court lacks jurisdiction under Section 515 of ERISA. Defs.' Mem. at 3–4. Section 515 provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

---

[2] Although not explicitly disputed in the Defendants' Memorandum, it should be noted that this Court has jurisdiction to decide plaintiffs' claims for an order enforcing the audit provisions of the CBA on this same basis.

29 U.S.C. § 1145. Defendants argue that jurisdiction under section 515 is "premature" until the Court has decided the alter ego and single employer issues, because Reliance can only be bound by the CBA if it is determined to be an alter ego of, or to constitute a single employer with, Continental. Defs.' Mem. at 3–4.

Defendants have confused jurisdiction and liability. Plaintiffs do not allege that section 515 creates jurisdiction in this Court for this action, see Compl. ¶ 2, but rather that Reliance is liable under section 515 as an alter ego or single employer. Compl. ¶¶ 36–41. Section 515 creates liability for failing to fulfill contribution obligations. 29 U.S.C. § 1145. Section 502 of ERISA (29 U.S.C. § 1132) creates jurisdiction, endowing plan trustees with standing to enforce section 515.[3] Laborers Health & Welfare Trust Fund for No. Cal. v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547 (1988) ("The liability created by § 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to § 502."). Nothing in either provision precludes jurisdiction merely because the action is based on a certain theory of liability.

Local 812 GIPA v. Canada Dry Bottling Co. of N.Y., No. 98 CIV 3791 LMM, 1999 WL 301692 (S.D.N.Y. May 13, 1999), on which defendants place great reliance, is not to the contrary. The court in Local 812 GIPA held that it lacked jurisdiction under either 29 U.S.C. § 185 or section 502 and 515 of ERISA only "over contribution claims based on an expired CBA." Id. at *4 (emphasis added) (citing Laborers, 484 U.S. at 548-89). The CBA at issue in this action is not expired, but is currently in effect. Compl. ¶ 10. With respect to pre-expiration claims, Local 812 GIPA held that there was jurisdiction under both 29 U.S.C. § 185 and section 502 of ERISA, even in the absence of a written

---

[3] Confusingly, defendants concede that this Court has jurisdiction pursuant to section 502 "to decide the *alter ego* and single employer issues." Defs.' Mem. at 4.

agreement requiring plan contributions, where the complaint alleged that the defendant was an "alter ego of an entity that is a signatory to such an agreement." Local 812 GIPA, 1999 WL 301692, at *4. Plaintiffs' claims in this case are no different.

For the foregoing reasons, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is DENIED.

II.  Failure to State a Claim

Defendants next assert that Complaint fails to state a claim that Reliance is an alter ego of Continental or that the two constitute a single employer, because the relevant allegations in the Complaint are based solely "upon information and belief" and are merely conclusory. Defs.' Mem. at 5–6.

Under the single employer doctrine, "a collective bargaining agreement may be enforced against non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit."[4] Brown v. Sandimo Materials, 250 F.3d 120, 129 n.2 (2d Cir. 2001). "Separate companies are considered a 'single employer' if they are part of a single integrated enterprise." Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996) (per curiam). Four factors are relevant to whether separate companies constitute a "single employer," none of which is controlling and not all of which need be present: "the interrelation of operations, common management; centralized control of labor functions and common ownership." Id. "[T]he common use of facilities and equipment" is also relevant. Id.

---

[4] "In determining whether the defendants' employees constitute a 'single bargaining unit,' we look for a 'community of interests' among the relevant employees, and factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." Sandimo Materials, 250 F.3d at 129 n.2. The parties do not appear to dispute that the employees of Continental and Reliance would constitute a single bargaining unit, and indeed defendants concede that their employees perform similar work in the same geographic region, and that both companies perform work solely as subcontractors of the same company. Defs.' Mem. at 12–13.

8

"Ultimately single employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies." Id. (quotation and citations omitted).

"The alter ego doctrine, while having the same binding effect on a non-signatory as the single employer/single unit doctrine, is conceptually distinct." Truck Drivers Local Union No. 807 v. Reg'l Import & Export Trucking, 944 F.2d 1037, 1046 (2d Cir. 1991). "[T]he focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." Id. "The hallmarks of the alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Id. (quotation omitted). "Although perhaps a germane or sufficient basis for imposing alter ego status, an anti-union animus or an intent to evade union obligations is not a necessary factor." Ret. Plan of the UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (quotations omitted). "Although the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer, it also applies to situations where the companies are parallel companies." Id. at 288 (quoting Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307 (1st Cir. 1998).

Plaintiffs allege that under either doctrine Reliance is bound by the CBA and defendants are jointly and severally liable under section 515 of ERISA for delinquent

contributions to the Funds. [5] Compl. ¶¶ 37–41. The Complaint contains the following allegations regarding the relationship between Continental and Reliance, which essentially mirror the factors courts consider in determining single employer and alter ego status:

> 16. Upon information and belief, at relevant times, Continental and Reliance had substantially identical management, business purpose, operations, equipment, customers, supervision, and/or ownership.
>
> 17. Upon information and belief, at relevant times, Continental and Reliance operated at the same location and had the same telephone number.
>
> 18. Upon information and belief, at relevant times, Continental and Reliance shared common employees who performed work covered by the CBAs.
>
> 19. Upon information and belief, at relevant times, Reliance paid employees for work covered by the CBAs that the employees performed for Continental, thereby aiding Continental to evade the requirements of the CBAs.
>
> 20. Upon information and belief, at relevant times, employees of Continental and Reliance interchanged between the companies.
>
> 21. Upon information and belief, at relevant times, Continental and Reliance shared common insurance coverage.
>
> 22. Upon information and belief, at relevant times, Continental and Reliance acted as a single integrated enterprise. There was never an arm's length relationship between them.
>
> 23. Upon information and belief, at relevant times, Continental and/or its officers, directors, owners, partners or stockholders exercised or exercised, either directly or indirectly, ownership, management or control over Reliance's operations.

Compl. ¶¶ 16–23.

---

[5] Although addressed by the defendants, Defs.' Mem. at 7, the doctrine of piercing the corporate veil is inapplicable here, because the plaintiffs do not seek to hold Continental's shareholders liable for the obligation of Continental. The plaintiffs do not seek to hold Continental's principals liable, nor do they allege that Reliance is a shareholder of Continental.

Applying Iqbal and Twombly, the Court must first "identify[]the allegations in the complaint that are not entitled to the assumption of truth." Iqbal, 556 U.S. at 680. Legal conclusions need not be accepted as true. Id. at 678. For the most part, these allegations are not mere legal conclusions, although they do touch on the relevant factors in the single employer and alter ego analyses. See Operating Eng'rs Local 101 Pension Fund v. Al Muehlenberger Concrete Constr., Inc., No. 13-2050-JAR-DJW, 2013 WL 5409116, at *6 (D. Kan. Sept. 26, 2013).[6] And the fact that they are based "upon information and belief" does not preclude their being sufficient to show an entitlement to relief. Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

The Court must next turn to whether the factual allegations, taken as true, state a claim that is plausible on its face. Although the plausibility inquiry is "a context-specific task," Iqbal, 556 U.S. at 679, the decisions of other district courts that have considered Iqbal and Twombly in the alter ego and single employer context are instructive. The weight of authority compels the conclusion that the allegations in the Complaint, although lean, are sufficient to state a plausible claim. See, e.g., Operating Eng'rs Local 101 Pension Fund, 2013 WL 5409116 (denying motion to dismiss where plaintiffs summarily pleaded, "upon information and belief," factors relevant to alter ego determination); Trustees of the Hollow Metal Trust Fund v. FHA Firedoor Corp., No 12 Civ. 7069, 2013 WL 1809673 (S.D.N.Y. Apr. 30, 2013) (denying motion to dismiss where plaintiffs "summarily pleaded each of" the factors of the alter ego test); Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc., No. 11-14656, 2012 WL 601425 (E.D. Mich. Feb. 23, 2012) (finding that plaintiffs sufficiently pleaded an alter

---

[6] Plaintiffs concede that the allegations in paragraphs 22 and 23 are legal conclusions. Pls.' Opp'n at 9 n.2.

ego claim where they alleged that the entities "share management, equipment, facilities, employees, customers, and are both engaged in the [same] business" and that the owners of each exercise control over the other); Flynn v. R.D. Masonry, Inc., 736 F. Supp. 2d 54 (D.D.C. 2010) (holding that plaintiffs stated a plausible alter ego claim where they alleged that the defendants had "common ownership or management, and/or the same or similar employees, customers, and type of work" and that the defendants had the same address).  Taken as true, the allegations in the Complaint state a plausible claim that, under the relevant factors, Reliance is the alter ego of Continental or the two constitute a single employer.

The only relevant requirement of Rule 8(a)(2) is that a complaint contain a "short and plain statement of the claim" showing that the Plaintiff is entitled to relief. "[D]etailed factual allegations" are not required.  Twombly, 550 U.S. at 555.  Because the allegations in the complaint give defendants "fair notice of what the claim is and the grounds upon which it rests," id., defendants' motion to dismiss the Complaint for failure to state a claim is DENIED.

III.    Summary Judgment

As discussed supra, with no record having yet been developed, it is inappropriate for the Court to consider defendants' motion for summary judgment at this time.

## CONCLUSION

For the foregoing reasons, defendants' motion is DENIED.

SO ORDERED.

Dated:      Brooklyn, New York
            October 15, 2013

/s/
I. Leo Glasser
Senior United States District Judge